CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 20 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| REBECCA SMITH | ) | Civil Action No. 7:10-cv-475 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| PROTECTIVE LIFE INSURANCE | ) | By: Judge James C. Turk |
| COMPANY, | ) | |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Plaintiff Rebecca Smith ("Plaintiff" or "Mrs. Smith") filed this action alleging that Protective Life Insurance Company ("Protective Life")[1] breached a life insurance contract issued to her husband, Barry Smith ("Decedent Smith" or "Mr. Smith"), bearing Policy Number ZL9849918 ("the Policy"). Protective Life filed a Motion for Summary Judgment. Plaintiff filed a motion for extension of time to file her brief in opposition to Defendant's Motion for Summary Judgment so that Plaintiff could pursue discovery of a Temporary Insurance Agreement. Plaintiff then filed her brief in opposition and Protective Life replied. The Court heard oral argument on April 11, 2012, and the matter is now ripe for decision. Having reviewed the evidence in the light most favorable to the Plaintiff, the Court finds that there is a genuine issue of material fact as to whether the Plaintiff paid the initial insurance premium prior to Mr. Smith's death, which was required for coverage to become effective under the terms of the

---

[1] Subsequent to Mr. Smith's death, Zurich Life Insurance Company of America ("Zurich Life") became Chase Insurance Life Company. Effective July 1, 2007, Chase Insurance Life Company merged into Protective Life and is no longer a separate entity. Zurich Life is referred to when describing events specific to that entity, otherwise Protective Life is referred to when discussing the Defendant and/or its predecessor companies.

1

Temporary Insurance Agreement. Accordingly, Defendant's Motion for Summary Judgment is **DENIED**.

I. **Background**

On October 1, 2004, Mr. Smith completed and signed a life insurance application for a $500,000 face value Preferred Non-Tobacco Policy with Zurich Life. The application was completed in the presence of Defendant's representative, a nurse, who conducted a medical examination required under the Policy. The annual premium quoted to Mr. Smith by Zurich Life for the Preferred Policy was $600.00. The application states that the Policy does not take effect unless during the lifetime of the Proposed Insured:

> (a) the Policy has been delivered and accepted by me (us); (b) the required first premium has been paid…and (d) all responses contained in the application including all parts, attachments, and amendments are true and complete as of the latest date that the Policy: is delivered to me (us), is accepted by me (us); and the required first premium paid.

The application further states that "the first premium will not be deemed paid unless any check, draft, or other instrument of payment (given as premium) is paid in accordance with its terms."[2]

Mr. Smith allegedly completed a Premium Payment Options form ("PPO form") as part of the application, including the section that provided for payment of the initial premium by credit card. Mrs. Smith has alleged that she "was present in the room" when her husband "completed and endorsed on October 1, 2004, a Premium Payment Options form … for the purpose of paying the initial premium." She has further alleged that "[i]t was the habit of Mr. Smith to either fax or mail documents he had signed on the same day of the endorsement." Defendant alleges they never received the PPO form. In support of this allegation Defendant

---

[2] The Plaintiff conceded at oral argument that the only issue before the Court is whether there was coverage under the Temporary Insurance Agreement.

states it was Zurich Life's routine practice to place an electronic copy of each endorsed PPO from in the policy file. Defendant has stated that Mr. Smith's file does not contain a PPO form.

The PPO form states:

> If the death benefit does not exceed $500,000.00 I authorize The Company to draw checks, drafts, or electronic debts against my account, or charge my credit card for initial premium payment selected above now in exchange for coverage under the Temporary Insurance Agreement. You should be provided a Temporary Insurance Agreement.

With regard to temporary coverage, the application booklet states, "your new policy will become effective after you receive final underwriting approval and after your first premium is paid. However—prior to the approval and after the medical examination—if you have paid the initial premium you are covered for a special period of up to 60 days...." Coverage under the Temporary Insurance Agreement is limited to $250,000.

Mr. Smith died on October 9, 2004, after experiencing a heart attack. On the same day, without knowledge of Mr. Smith's death, Zurich Life offered Decedent Smith coverage at the Select Non-Tobacco annual premium rate of $885.00. Zurich Life Account Executive Connie De Golian left messages on Decedent Smith and Plaintiff's home answering machine offering coverage at the higher Select Non-Tobacco premium rate on October 11 and 14, 2004. On October 20, 2004, Ms. De Golian spoke to someone at Decedent Smith and Plaintiff's home who informed her that Mrs. Smith would return her call; however, Ms. De Golian's call was not returned. Ms. De Golian called again on October 21, 2004, but was unable to speak to anyone. On October 26, 2004, Ms. De Golian called Decedent Smith's work number and left a message. On October 27, 2004, another Zurich Life representative left a message on Plaintiff and Decedent Smith's home answering machine.

3

On October 27, 2004, Plaintiff called Zurich Life, approved the higher premium rate being offered to Decedent Smith, and provided a credit card for his first premium payment. Plaintiff did not mention her husband's death 18 days earlier during this phone call. Decedent Smith's policy was issued on October 28, 2004. The first premium payment was credited by Zurich Life as paid on October 29, 2004.

Plaintiff did not notify Protective Life of Decedent Smith's death until almost two years later, on August 24, 2006. Plaintiff completed a claim for benefits under the Policy on February 9, 2007. Protective Life denied the claim for death benefits on March 21, 2008. After it denied the claim, Protective Life returned to Plaintiff all premiums paid with 3% interest.

## II. Standard of Review

In considering a summary judgment motion, the Court views the facts, and any inferences to be drawn from those facts, in the light most favorable to the nonmoving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where reasonable jurors could find that the nonmoving party is entitled to a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247–48. The moving party bears the initial burden of showing the lack of a genuine dispute as to the material facts in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a motion for summary judgment is properly made and supported, however, that burden shifts to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

4

Corp., 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

### III. Analysis

Defendant's motion for summary judgment argues that because one of the conditions precedent—payment of the initial premium—under the Temporary Insurance Agreement was not fulfilled before Mr. Smith's death, coverage under the Temporary Insurance Agreement never took effect.[3] Specifically, Defendant argues that because the PPO form was not received by the Defendant and Mr. Smith's credit card was not charged pursuant to the PPO form's authorization, Mr. Smith had not paid the initial premium prior to his death. (Dkt. No. 19 at 6). Plaintiff claims that Decedent Smith's coverage under the Temporary Insurance Agreement took effect on October 1, 2004, the date Decedent Smith allegedly endorsed the PPO form and conveyed it to the Defendant either via fax or mail in accordance with his habit. Plaintiff argues that her statement that it was Decedent Smith's habit to fax or mail documents on the same day of the endorsement creates a disputed material fact regarding whether the initial premium was "paid" prior to Smith's death.[4] The Court finds that these competing versions of the events, which contest whether Defendant received the PPO form, create a disputed genuine issue of material fact rendering summary judgment inappropriate.

A contract of insurance is "'[a]n agreement by which one party for a consideration (which is usually paid in money, either in one sum, or at different times during the continuance

---

[3] "A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." Smith v. McGregor, 237 Va. 66, 75 (1989) (quoting Morotoc Ins. Co. v. Fostoria Novelty Co., 94 Va. 361, 365 (1897)).

[4] Defendant argues that Plaintiff's habit evidence is inadmissible because "[i]t has been repeatedly stated that habit or pattern of conduct is never to be lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission." Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 511 (4th Cir. 1977). The Court, however, believes a decision on the admissibility of the Plaintiff's prospective testimony is a matter best left for trial.

5

Case 7:10-cv-00475-JCT Document 23 Filed 04/20/12 Page 5 of 7 Pageid#: 228

of the risk), promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest.'" Autumn Ridge, LP v. Acordia of Virginia Ins. Agency, Inc., 270 Va. 83, 90 (2005) (quoting Cosmopolitan Life Ins. Assn. v. Koegel, 52 S.E. 166, 168 (1905)). Under Virginia law, a court interpreting an insurance policy must consider that "an insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction. In the absence of any ambiguity, a court must interpret the contract by examining the language explicitly contained therein...."' Maximus, Inc. v. Twin City Fire Ins. Co., 2012 WL 848039 at *2 (E.D. Va. Mar. 12, 2012) (quoting SNL Fin., LC v. Phila. Indem. Ins. Co., 2011 U.S. App. LEXIS 23529 at *9–10 (4th Cir. Nov. 23, 2011)).

In the present case the initial question is what the term "paid" means under the Temporary Insurance Agreement. Defendant argues under Virginia law "paid" means "received" and relies on Autumn Ridge, 270 Va. 83, 90 (2005), to support this proposition. In the context of deciding the appropriate measure of damages for failure to procure insurance, the Virginia Supreme Court commented on the principles on which insurance contracts are based: "the premium paid by the insured, and the risk which the insurer takes upon himself, are considerations each for the other; they are correlatives, whose mutual operation constitutes the essence of the contract of insurance. The insurer shall not be exposed to the risk without receiving the premium." Autumn Ridge, 270 Va. at 90 (quoting Ingrams v. Mutual Assurance Society, 40 Va. (1 Rob.) 66, 668 (1843)). As Defendant argues because the Defendant did not actually receive the premium until October 29, 2004, twenty days after Mr. Smith's death, the condition precedent of payment was not satisfied prior to Mr. Smith's death and the Temporary Insurance Agreement never became effective.

6

Contrary to Defendant's argument, Autumn Ridge does not control the outcome in this case because it does not resolve the factual dispute regarding whether the Defendant received the PPO form. Defendant's argument makes an unsupported intellectual leap from "received" meaning delivering the PPO form to "received" meaning charging the credit card. This Court can find no authority to support that proposition. Rather, Plaintiff has come forward with sufficient evidence that Decedent Smith sent the PPO form to the Defendant in accordance with his habit and thus the PPO form ought to have been received. Defendant states that there is no record of the PPO form in Mr. Smith's file. Thus, there is a disputed material fact as to whether Defendant received the PPO form. Based on Plaintiff's evidence it is possible that a reasonable jury could believe the Defendant received the PPO form, thereby entitling Mrs. Smith to death benefits under the Temporary Insurance Agreement.

### IV.   Conclusion

The Court concludes that Plaintiff has shown that a disputed genuine issue of material fact exists as to whether the Defendant received the PPO form. Based on the Plaintiff's evidence a rational trier of fact could find for the Plaintiff, and thus summary judgment is inappropriate. Accordingly, Defendant's Motion for Summary Judgment must be **DENIED**.

ENTER: This 20th day of April, 2012.

Hon. James C. Turk
Senior United States District Judge